USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------- X
LEOPOLD SIAO-PAO,

                   Petitioner,

   - against -

SUPERINTENDENT WILLIAM J. CONNOLLY,

                   Respondent.
---------------------------------X

06 Civ. 10172 (VM)

**DECISION AND ORDER**

**VICTOR MARRERO, United States District Judge.**

Pro se petitioner Leopold Siao-Pao ("Siao-Pao") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, in connection with his denial of parole on August 27, 2003 by the New York State Parole Board (the "Parole Board"). Siao-Pao raises four claims in his petition: (1) the Parole Board's determination was arbitrary and capricious; (2) the Parole Board violated Siao-Pao's constitutional due process rights ("Due Process") by failing to provide a written statement of reasons for parole denial; (3) the Parole Board violated Siao-Pao's equal protection rights ("Equal Protection"); and (4) the denial of parole for Siao-Pao was arbitrary because the Parole Board permitted political pressure and public opinion to influence its decision-making. For the reasons stated below, his petition is denied.

1

# I. **BACKGROUND**[1]

## A. THE UNDERLYING CRIME

On September 26, 1981, Siao-Pao stabbed and killed 38-year-old Patrick Kehn ("Kehn") while robbing him and a companion in Manhattan's East River Park. On August 24, 1982, pursuant to a plea agreement, Siao-Pao was sentenced to 18 years to life on second-degree murder charges and 8 1/3 to 25 years for first degree robbery, with the two sentences to run concurrently.

Siao-Pao's minimum 18-year sentence expired in 1999. New York prison regulations provide for biannual parole applications. Since Siao-Pao's 1999 sentence expiration, he has applied for parole four times: in August 1999, August 2001, August 2003, and August 2005.[2] The Parole Board has denied his application on each occasion. The August 2003 parole denial is challenged in this action.

## B. THE 2003 PAROLE DENIAL

Before reaching its decision to deny Siao-Pao parole in

---

[1] The following factual summary derives from the parties' submissions to the Court and any exhibits attached thereto, specifically: Siao Pao's Petition for a Writ of Habeas Corpus, dated October 2, 2006 ("Habeas Pet."); Respondent's Memorandum of Law in Opposition to Petition for a Writ of Habeas Corpus, dated October 24, 2007 ("Resp't Mem."); Petitioner's Traverse, dated November 19, 2007 ("Reply"); Declaration of Priscilla Steward in Opposition to Petition for a Writ of Habeas Corpus, dated October 24, 2007 ("Steward Decl."). Except where specifically quoted, no further reference to these documents will be made.

[2] Siao-Pao's August 2007 parole hearing was postponed until November 2007, and the Court has not been updated as to the status of that hearing.

2

2003, the Parole Board conducted a hearing in which Siao-Pao expressed remorse for murdering Kehn and a desire for a second chance. After admitting to his "very minor record," Siao-Pao answered affirmatively when asked by Commissioner Gailor ("Gailor") if "this was a really serious escalation of your life-." (Parole Transcript 2-3, attached as Exhibit A to Steward Decl.) After Siao-Pao's affirmative answer, Gailor completed the previous question with the following statement: "your activities, criminal activities. Why did it happen?" Siao-Pao proceeded with his response, explaining that prior to the incident, he had lost his job and was experiencing difficulty in securing employment; he then began spending time on the streets. During the interview, Siao-Pao also acknowledged the wrongfulness of his action, which he said was not premeditated, and noted his daily reflection on what had transpired. Siao-Pao told the Parole Board that he had had a clean disciplinary record since his 2001 Parole Board appearance, and that he had been working as a paralegal in the law library. Siao-Pao also indicated that he had options for a place to live in upon release and had not secured employment, but was flexible, with the ultimate goal of obtaining a commercial driver's license or warehouse work.

At the conclusion of the 2003 hearing, the Parole Board denied Siao-Pao parole and issued the following opinion:

3

> During the course of an in-concert robbery you stabbed
> your victim to death. These offenses represent a serious
> escalation of your criminal behavior and a total
> disrespect for human life. All factors considered leads
> the panel to believe that your release is incompatible
> with the public welfare.

(Parole Board Release Decision Notice, attached as Ex. B to
Steward Decl.)

## C. APPEALS OF THE 2003 PAROLE DENIAL

Siao-Pao appealed the Parole Board's decision to the
Parole Board Appeals Unit (the "Appeals Unit"). The Appeals
Unit denied Siao-Pao's appeal on August 26, 2004. The Appeals
Unit concluded that "[t]he record demonstrates that the Board
considered all of the factors relevant to the disposition of
[Siao-Pao's] application for parole, including [Siao-Pao's]
good behavior, accomplishments, his employability, his
involvement in institutional programs and his plans upon
release." (Administrative Appeal Decision Notice 1, attached
as Ex. E to Steward Decl.)

On or about May 19, 2004, Siao-Pao sought relief through
a proceeding in the New York State Supreme Court (the "State
Court") pursuant to Article 78 ("Article 78") of the New York
State Civil Practice Law and Rules ("CPLR"), arguing that (1)
he had received a cursory, pro forma hearing from a biased
panel that had already decided to deny his parole application;
(2) the Parole Board's decision was based upon an incomplete

4

record; (3) the Parole Board wrongly concluded that his offense constituted a "serious escalation" of his "criminal behavior"; (4) the Parole Board did not properly weigh the statutory factors in reaching its decision, and issued a nonspecific boilerplate written decision; (5) the Parole Board's grant of parole to Kathy Boudin, an inmate also convicted of first-degree armed robbery and second-degree murder, demonstrated that he was denied the Equal Protection of the law; and (6) the Parole Board's denial of his petition was the result of political pressure exerted by then New York Governor George Pataki ("Pataki") to deny parole to inmates convicted of violent crimes. Siao-Pao asked the State Court to either (1) annul the Parole Board's determination and direct his release, or (2) order a new hearing.

In an opinion dated March 28, 2005, the State Court held that the Parole Board's denial was within its discretion, because the record showed that the Board made an individualized determination after considering the statutorily mandated factors. See In re. Siao-Pao v. Bd. of Parole Appeals Unit, Index No. 401841/04 (Sup. Ct. N.Y. Cty 2005). The State Court elaborated that there was "simply no evidence in the record to demonstrate that the Board's determination reflects intentionally disparate treatment" of Siao-Pao and that it was "unpersuaded that the Parole Board's determination

5

was affected by irrationality bordering on impropriety." Id. (internal quotation omitted). On appeal to the New York State Supreme Court, Appellate Division (the "Appellate Division"), Siao-Pao argued that the Parole Board had failed to properly weigh the statutory factors of Executive Law § 259-i. The Appellate Division unanimously dismissed the appeal as moot given Siao-Pao's subsequent August 2005 hearing and, in the alternative, found that the Parole Board had properly considered the statutory factors set forth in Executive Law § 259-i, including the presentence report and the victim impact statement. See In re Siao-Pao v. New York State Bd. of Parole, 813 N.Y.S.2d 658, 659 (App. Div. 1st Dep't 2006).

Siao-Pao sought leave to appeal the Appellate Division's decision to the New York Court of Appeals, which denied his motion without comment. See In re Siao-Pao v. New York State Bd. of Parole, 855 N.E.2d 1173 (N.Y. 2006).

While Siao-Pao's Article 78 motion was still pending in the State Court, he filed a pro se habeas petition challenging his 2003 parole denial. On January 26, 2005, Judge George B. Daniels ordered the petition dismissed without prejudice to allow Siao-Pao to refile his petition within ninety days after State Court exhaustion. Siao-Pao subsequently filed this timely pro se habeas petition challenging the August 2003 parole denial.

6

## II. LEGAL STANDARD

As an initial matter, the Court notes that Siao-Pao is proceeding pro se, and that his submissions should thus be held to "less stringent standards than formal pleadings drafted by lawyers." Ferran v. Town of Nassau, 11 F.3d 21, 22 (2d Cir. 1993) (quoting Hughes v. Rowe, 449 U.S. 5, 9 (1980)). Moreover, when a plaintiff brings a case pro se, the Court must construe his pleadings liberally and interpret them "to raise the strongest arguments that they suggest." Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). Still, pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law." Boddie v. New York State Div. of Parole, 285 F. Supp. 2d 421, 426 (S.D.N.Y. 2003) (quoting Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983)).

Federal habeas review of state court decisions is governed by the standards prescribed by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an

7

> unreasonable determination of the facts in light of the
> evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is "contrary to"
established federal law if the state court arrives at a
conclusion on a question of law that is opposite to that
reached by the Supreme Court, or if the state court
adjudicates essentially the same facts as a prior Supreme
Court case but reaches an opposite result. See Williams v.
Taylor, 529 U.S. 362, 405-6 (2000) (citations omitted). A
state court decision is an "unreasonable application" of
established federal law if (1) the state court correctly
identifies the relevant legal principle but unreasonably
applies it to a set of facts; (2) the state court unreasonably
extends an existing principle to a new context where it should
not apply; or (3) the state court refuses to extend an
existing principle to a context where it should be extended.
Id. at 407. Additionally, any factual determination made by
the state court shall be presumed correct unless the
petitioner can prove otherwise with clear and convincing
evidence. See 28 U.S.C. § 2254(e)(1).

Before determining whether the Appellate Division's
alternative ruling on the merits upholding the Parole Board's
denial of Siao-Pao's petition survives AEDPA scrutiny, the
Court must determine whether Siao-Pao has cleared the
procedural hurdles for filing a habeas petition.

## III. DISCUSSION

### A. MOOTNESS

Respondent William J. Connolly ("the State") argues that Siao-Pao's petition should be dismissed as moot in light of his parole denial following his 2005 Parole Board hearing, as previously decided by the Appellate Division. Siao-Pao contends that the issue is not moot because there is a likelihood of repetition of the error, and dismissal would allow the State to unconstitutionally deny him parole every two years without any federal court review. Since it normally takes more than two years to exhaust all available state remedies, Siao-Pao points out that he would always be eligible for a new biannual parole hearing by the time a federal court could hear his habeas petition. Thus, Siao-Pao argues that under this reasoning every two years his petition for federal habeas relief would be denied on mootness grounds, and would effectively allow the State to avoid any federal review of its parole decisions.

Siao-Pao also alleges that the Parole Board erred in not issuing to him a detailed written statement of the reasons underlying its decision, and argues that the same flawed procedure will recur in subsequent hearings. The State counters that this claim also should be rendered moot in light of the subsequent 2005 parole hearing.

9

The case law is not settled on whether a subsequent parole hearing renders moot a federal habeas petition to review an earlier parole denial. See, e.g., Rodriguez v. Greenfield, No. 99 Civ. 0352, 2002 WL 48440, at *4 (S.D.N.Y. Jan. 10, 2002) (holding that a challenge to 1998 parole denial was "academic" because of subsequent parole denials); but see Defino v. Thomas ("Defino I"), No. 02 Civ 7413, 2003 WL 40502, at *3 (S.D.N.Y. Jan. 2, 2003) (referring to an argument similar to Siao-Pao's as "potentially powerful"). Regardless, this Court need not decide whether Siao-Pao's petition has been rendered moot by his subsequent parole hearings. As this Court has observed "in habeas corpus cases, potentially complex and difficult issues about the various obstacles to reaching the merits should not be allowed to obscure the fact that the underlying claims are totally without merit." Brown v. Thomas, No. 02 Civ. 9257, 2003 WL 941940, at *1 (S.D.N.Y. Mar. 10, 2003).

Since Siao-Pao's petition can be denied on the merits, this Court need not determine whether or not his petition is moot.

B. PROCEDURAL EXHAUSTION

Before seeking federal habeas relief, a petitioner must exhaust the remedies available in state court or demonstrate the absence of an effective state remedy. See Fama v.

10

Commissioner of Corr. Servs., 235 F.3d 804, 808 (2d Cir. 2000) (citing 28 U.S.C. § 2254(b)(1)). A petitioner has exhausted a claim in state court when he has "'fairly presented' each federal claim to the highest state court." Id. (quoting Picard v. Connor, 404 U.S. 270, 275 (1971)).

A New York inmate challenging denial of his parole exhausts his available remedies by filing an appeal with the Appeals Unit, petitioning state court for Article 78 relief, and appealing a denial of Article 78 relief to the "highest state court capable of reviewing it." Scales v. New York State Div. of Parole, 396 F. Supp. 2d 423, 428 (S.D.N.Y. 2005) (quoting Cotto v. Herbert, 331 F.3d 217, 237 (2d Cir. 2003)).

If a claim has not been presented to a state court but the opportunity to do so has lapsed due to a state procedural bar, the claim is procedurally defaulted but may be "deemed exhausted" for the purposes of the statutory requirement. See Bossett v. Walker, 41 F.3d 825, 828-29 (2d Cir. 1994). A claim is procedurally defaulted when a petitioner fails to raise a claim in state court and can no longer do so. See Washington v. James, 996 F.2d 1442, 1446 (2d Cir. 1993) (internal citations omitted). In such instances of procedural default, the claims are procedurally forfeited unless the petitioner demonstrates (1) sufficient cause for the default and resulting prejudice, or (2) that the failure to consider

11

the claims will "result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991); see also Edwards v. Carpenter, 529 U.S. 446, 451 (2000).

As to the first part, "cause" is defined as "some objective factor external to the defense" that impeded the defendant's efforts to raise the claim. McCleskey v. Zant, 499 U.S. 467, 493 (1991)(quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)). To demonstrate prejudice, a petitioner must show more than that errors "created a possibility of prejudice, but [instead] that they worked to his actual and substantial disadvantage." United States v. Frady, 456 U.S. 152, 170 (1982); see also Day v. Taylor, 459 F. Supp. 2d 252, 256 (S.D.N.Y. 2006). A procedural default may also be excused upon a showing that the failure to entertain the claims would result in a fundamental miscarriage of justice. This standard requires a petitioner to present sufficient new evidence, without which a habeas court will not reach the merits of a barred claim.

The State contends that Siao-Pao has not exhausted claims asserted here that were not raised before the Appellate Division. Before the Appellate Division, Siao-Pao claimed only that the Parole Board failed to properly weigh the statutory factors provided in Executive Law § 259, but he did not raise his claims that he was denied Equal Protection, that

12

the Parole Board was influenced by political pressures, or that the Parole Board failed to provide a written statement of its reasons for denying parole. These claims were also not raised in Siao-Pao's application to the Court of Appeals for leave to appeal. Siao-Pao argues that these claims are procedurally forfeited, as he could seek a declaratory judgment in State Court, but that such an action would be futile. Although CPLR § 3001 authorizes the issuance of a declaratory judgment regardless of "whether or not further relief is or could be claimed," this procedure is a discretionary measure. There is no guarantee that the State Court will entertain Siao-Pao's claim. Additionally, "an action for a declaratory judgment may not be used as a vehicle for circumventing the prerequisites for issuance of a writ of habeas corpus." Goodwin v. Hammock, 502 F. Supp. 756, 759 (S.D.N.Y. 1981). Thus, the Court finds Siao-Pao's declaratory judgment arguments about recourse unavailing and concludes that the three claims not raised before the Appellate Division are unexhausted.

Moreover, Siao-Pao does not satisfy either exception to procedural forfeiture to overcome his failure to exhaust his claims. Siao-Pao offers no explanation for his failure to exhaust all of the claims raised in his habeas petition, nor any resulting prejudice. Accordingly, the Court finds that

13

Siao-Pao has not demonstrated the "cause" and "prejudice" necessary to overcome his lack of exhaustion. Additionally, Siao-Pao has not offered any new evidence, and given his admission of guilt, there is no evidence of innocence sufficient to support the miscarriage of justice exception necessary for the Court to excuse Siao's-Pao's procedural default.

Although the Court finds that these claims are unexhausted, the Court may still take jurisdiction and dismiss Siao-Pao's claims on the merits. See 28 U.S.C. 2254(b)(2); Manley v. Thomas ("Manley I"), 255 F. Supp. 2d 263 (S.D.N.Y. 2003).

## C. MERITS OF UNDERLYING CLAIMS

Siao-Pao claims that (1) his Due Process rights were violated because the Parole Board's determination was arbitrary and capricious; (2) the Parole Board violated his Due Process rights by failing to provide a written statement of reasons for parole denial; (3) the Parole Board violated his Equal Protection rights; and (4) the Parole Board's determination to deny parole was arbitrary because it permitted political pressure and public opinion to influence its decision-making.

### 1. Due Process

Siao-Pao alleges that the Appellate Division erred by not

14

concluding that the Parole Board inappropriately considered his prior conduct when it denied his 2003 application for parole. Specifically, he argues that the Parole Board weighed conduct not constituting a "crime" under New York State law in deciding that his conviction represented a serious escalation of his criminal conduct. This contention does not state a cognizable habeas claim, however, because it is not the role of federal habeas courts to re-examine state court determinations of state law. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). "In conducting habeas review, a federal court is limited to deciding whether a conviction [or denial of parole] violated the Constitution, laws, or treaties of the United States." Id. at 68 (citing 28 U.S.C. § 2241; Rose v. Hodges, 423 U.S. 19, 21 (1975)). Although Siao-Pao does not explicitly couch his claim in Due Process terms, in light of his pro se status, the Court adopts such a construction, and combines his claims of the Parole Board's arbitrariness and failure to provide a proper written statement of its reasons for denial of Siao-Pao's parole under the same Due Process analysis.

Inmates have a liberty interest in parole only if the state of their incarceration fosters an expectation of release by "establish[ing] a scheme whereby parole shall be ordered unless specified conditions are found to exist." Barna v.

15

Travis, 239 F.3d 169, 171 (2d Cir. 2001)(quoting Boothe v. Hammock, 605 F.2d 661, 664 (2d Cir. 1979)). New York State's scheme does not create a liberty interest in parole because it gives the Parole Board great discretion in deciding which inmates may be released. See id.; see also N.Y. Exec § 259-c(1).

The Parole Board is charged with granting parole:

if there is a reasonable probability that, if such inmate is released, he will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society and will not so deprecate the seriousness of his crime as to undermine respect for law.

N.Y. Exec § 259-i(2)(c)(A). In making this determination, the Parole Board is required to consider the following relevant factors:

(i) the institutional record including program goals and accomplishments, academic achievements, vocational education, training or work assignments, therapy and interpersonal relationships with staff and inmates;

(ii) performance, if any, as a participant in a temporary release program;

(iii) release plans including community resources, employment, education and training and support services available to the inmate;

Id. Moreover, when, as here, the minimum sentence is imposed by a court, the Parole Board must consider:

(i) the seriousness of the offense with due consideration to the type of sentence, length of sentence and recommendations of the sentencing court, the district attorney, the attorney for the inmate, the pre-sentence probation report as well as consideration of any

16

> mitigating and aggravating factors, and activities following arrest and prior to confinement; and

> (ii) prior criminal record, including the nature and pattern of offenses, adjustment to any previous probation or parole supervision and institutional confinement.

N.Y. Exec § 259-i(2)(c)(A), and, by incorporation, N.Y. Exec § 259-i(1)(a). Because the State's parole statute does not create a legitimate expectation of release, there is a high bar for challenging Parole Board decisions on federal Due Process grounds. See Barna, 239 F.3d at 171. Since New York inmates do not have a liberty interest in parole, Siao-Pao's Due Process rights, guaranteed by the Fourteenth Amendment, are "limited to not being denied parole for arbitrary or impermissible reasons." Boddie, 285 F. Supp. 2d at 428 (quoting Brown, 2003 WL 941940, at *1). Moreover, "[d]enial of parole is neither arbitrary nor capricious when the Parole Board relies on the factors defined by New York statute." Romer v. Travis, No. 03 Civ. 1670, 2003 WL 21744079 (S.D.N.Y. July 29, 2003) (citing Davis v. Thomas, 256 F. Supp. 2d 190, 191 (S.D.N.Y. 2003)).

### a. Consideration of Past Conduct

Siao-Pao's claim that the Parole Board improperly assumed that he had a more extensive criminal record in finding that his offense represented a "serious escalation" of criminal behavior fails because it is not supported by the record. The hearing transcript from Siao-Pao's interview prior to the

17

August 2003 denial demonstrates that in addition to considering Siao-Pao's prior offenses and record, the Parole Board also relied on his housing and employment plans upon release, and his achievements in prison. During the interview, the Board informed Siao-Pao that it would "consider everything" and provided him with the opportunity to make an additional statement. (Transcript of Parole Hearing 7, attached as Ex. A to Steward Decl.) In its opinion, the Parole Board indicated that it had considered Siao-Pao's entire record but determined that the seriousness of his crime outweighed the factors favoring parole.

The Parole Board is permitted to consider the seriousness of Siao-Pao's crime, and therefore, did not act arbitrarily in concluding that Siao-Pao's criminal record rendered him a threat to the public welfare. Under New York law, the Parole Board may accord each statutory factor "whatever weight it deems appropriate, and need not expressly discuss each of the reasons in its determination." Davis v. Thomas, 256 F. Supp. 2d 190, 192 (S.D.N.Y. 2003) (citing Garcia v. New York State Div. of Parole, 657 N.Y.S.2d 415, 418 (App. Div. 1st Dep't 1997); see also Manley I, 255 F. Supp. 2d at 267. Moreover, it "need not expressly discuss each of the reasons in its determination." Id. The Parole Board considered all of the required factors and accorded more weight to the seriousness

of the underlying crime, which is "entirely consistent with the criteria laid down by the legislature." Morel v. Thomas, No. 02 Civ. 9622, 2003 WL 21488017, at *5 (S.D.N.Y. June 26, 2003) (citing Thurman v. Hodges, 739 N.Y.S.2d 324 (App. Div. 4th Dep't 2002)). There is no evidence on the record before the Court that the Parole Board relied on arbitrary or impermissible reasons for denying Siao-Pao parole. Accordingly, Siao-Pao's federal Due Process claim is denied.

b. Written Statement

Siao-Pao also argues that the Parole Board violated his Due Process rights by not providing him with an explicit written statement justifying why his release would be "incompatible with the public welfare" as required by Executive Law 259-i(2)(a). Under New York law, when an inmate is denied parole, he "shall be informed in writing within two weeks of such appearance of the factors and reasons for such denial of parole. Such reasons shall be given in detail and not in conclusory terms." Id. However, as previously stated, whether the Parole Board fully complied with New York law is a question for the New York courts to determine. See Estelle, 502 U.S. at 67-68. Federal habeas review of New York parole decisions is limited to the question of whether the Parole Board acted "for arbitrary or impermissible reasons." Boddie, 285 F. Supp. 2d at 428. The Court's examination is limited to

whether the Parole Board's allegedly deficient written explanation implicates a Due Process violation. The Court finds that Siao-Pao's parole denial was not based on arbitrary or impermissible factors, and thus, does not satisfy the requirements of a Due Process violation. The written statement issued by the Parole Board was not so deficient as to render the decision arbitrary, as it informed Siao-Pao of the reasons for its denial, nor was it based on any impermissible considerations. Accordingly, Siao-Pao's petition based on a violation of his Due Process rights is denied.

## 2. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment of the United States Constitution requires that in the distribution of rights and duties by the states, similarly situated persons receive similar treatment. Although Siao-Pao does not specifically refer to the Equal Protection Clause, the Court liberally interprets his claim of not being accorded treatment equal to those similarly situated when he was denied parole as alleging a violation of his Equal Protection rights. In particular, he compares himself to Kathy Boudin ("Boudin"), who received a similar sentence for the same conviction of second degree felony murder and first degree robbery, but was granted parole in spite of allegedly committing a more severe

offense. Siao-Pao elaborates on his Equal Protection claim in his Reply by comparing himself to two additional offenders that were granted parole. The first, Gerald T. Balone ("Balone"), was convicted of a triple murder while on parole for a robbery conviction and, according to Siao-Pao, Balone was paroled after serving approximately thirty years. The second, William R. Phillips ("Phillips"), was convicted of double homicide and attempted murder and, according to Siao-Pao, released after serving approximately thirty years in prison.

Siao-Pao's claim that the Board failed to treat him equally to other similarly situated prisoners may be analyzed under either the test of selective enforcement or the class of one doctrine. Siao- Pao's Equal Protection claim fails under either analytical framework.

a. Selective Enforcement

To prevail on a selective enforcement claim based on the Equal Protection Clause, a plaintiff must allege that:

(1) the person, compared with others similarly situated, was selectively treated; and

(2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.

Giordano v. City of New York, 274 F.3d 740, 750-51 (2d Cir. 2001)(internal citations omitted).

21

In his Reply, Siao-Pao claims that his denial was due to his race and/or social status, noting that his comparators are all white, and allegedly similarly situated. He asserts that his discovery, after his Article 78 petition, of the release of two other similarly situated white inmates who committed more serious crimes, combined with the State Court's failure to consider race, financial security or social advantages in arriving at its determination, militates against a presumption of correctness under the AEDPA standard of review.

Siao-Pao's only support for his argument that he is similarly situated to Boudin, Balone, and Phillips is that they also were convicted of violent crimes. However, as the Court noted in Defino v. Thomas ("Defino II"), an inmate's establishment of similarities with others granted parole "does not necessarily create an equal protection violation." No. 02 Civ. 7413, 2003 WL 1563253, at *6 (S.D.N.Y. Mar. 25, 2003). Thus, without more compelling evidence, there is little support for Siao-Pao's claim of selective treatment.

Siao-Pao's claim also fails on the second prong of impermissible consideration. "'Unless a classification trammels fundamental personal rights or is drawn upon inherent suspect distinctions such as race, religion, or alienage,' the courts must presume that the distinctions made are constitutional as long as they are 'rationally related to a

legitimate state interest.'" Defino I, 2003 WL 40502, at *4 (quoting City of New Orleans v. Dukes, 427 U.S. 297 (1976)). Given the discretionary nature of the parole determination, Siao-Pao's evidence that three white violent offenders were granted parole, while he was not, is not sufficient, standing alone, to support his Equal Protection claim. As the Brown court observed:

[T]he number and variety of factors bearing on the seriousness of the underlying offense and the likelihood that an offender will be a danger to the community make it impossible to conclude, on the bases of the sketchy data presented, that petitioner has been singled out from among all homicide offenders for disparate treatment.

2003 WL 941940, at *2. That Siao-Pao, as an African American male was denied parole, while three white inmates who committed similar offenses were granted parole, is an inadequate basis to establish that the alleged selective treatment was based on an impermissible ground, given the discretionary nature and numerous considerations factored into the Parole Board's determination. There is also an absence in this record of any race-based comments that may suggest impermissible considerations, or of sufficiently extensive statistical evidence that may support a claim of unequal treatment. Accordingly, any claims based on a violation of Siao-Pao's Equal Protection rights due to selective enforcement are denied.

b. Class of One

23

The record also does not support Siao-Pao's Equal Protection claim on a "class of one" theory. To establish a "class of one" claim, a plaintiff must allege that "[]he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). This Court has interpreted the Olech standard to require that differential treatment be both intentional and irrational to satisfy the class of one standard. See Manley v. Thomas ("Manley II"), 265 F. Supp. 2d 363, 365 (S.D.N.Y. 2003) (citing Brown, 2003 WL 941940, at *2). Additionally, the Supreme Court recently clarified the Olech holding by limiting class of one claims in contexts characterized by individualized and subjective determinations where "allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise." Engquist v. Oregon Dep't of Agric., ___ S. Ct. ___, 2008 WL 2329768, at *8 (June 9, 2008)(holding that a class of one claim is not cognizable in the public employment context).

There is no evidence here that Siao-Pao was similarly situated to his comparators or subjected to "irrational and wholly arbitrary acts" and "intentional disparate treatment." See Giordano, 274 F.3d at 751. Given the numerous factors

24

considered by the Parole Board, it is unlikely that he can do so. See Seltzer v. Thomas, No. 03 Civ. 00931, 2003 WL 21744084, at *4 (S.D.N.Y. July 29, 2003). Pursuant to Executive Law § 259-i(2)(c), the Parole Board is required to weigh criteria specific to a particular inmate, and need not enumerate or give equal weight to each factor. This process is discretionary, as was the decision in Engquist, where the Supreme Court rejected a class of one argument and accorded deference to the state's determination based on the subjective and individualized nature of the decision. See 2008 WL 2329768, at *8. The Parole Board's written statement demonstrates that it considered Siao-Pao's prior offenses, housing and employment plans, and achievements in prison. The Parole Board specifically relied on a concern for the public welfare, which is a entirely rational basis for parole denial.

In sum, there is no evidence that the Parole Board's decision to deny Siao-Pao's petition was irrational, arbitrary, or intentionally disparate. Accordingly, the Parole Board's denial of parole to Siao-Pao, while granting parole to his comparators, was not a violation of Siao-Pao's Equal Protection rights based on a class of one theory.

### 3. Political Pressure

Siao-Pao argues that the denial of his 2003 petition was arbitrary, and influenced by political pressure exerted by

25

Pataki, who advocated eliminating parole for inmates convicted of violent offenses. He asserts that the Parole Board "changed its policy and began selectively singling out certain offenders for disparate treatment." (Habeas Pet. 6.) First, this claim is in tension with Siao-Pao's Equal Protection claim, which concedes that some violent offenders were granted parole. It also undercuts the "class of one" requirement of intentional denial, since the political motivation claim "alleges precisely the opposite: that the Board has succumbed to political pressure by denying parole to all violent offenders. It follows that if other violent offenders were released, the Board's decision to do so must have been unintentional." Seltzer, 2003 WL 21744084, at *4. Additionally, Siao-Pao has failed to present any evidence that the Parole Board's decision was politically motivated. See Manley I, 255 F. Supp. 2d at 267 (rejecting claims that political pressure and public opinion inappropriately influenced the Parole Board's decision on the basis of petitioner's conclusory assertion and failure to present factual evidence).

Moreover, even if some State public policy articulated by Pataki played a role in the Board's decision, Siao-Pao would still not be entitled to any relief. This Court has recognized that "the Board's decision to get tough on violent

offenders because of public and political pressure – in fact seems entirely permissible, as it closely relates to the statutory factor of whether 'release is not incompatible with the welfare of society and will not so deprecate the seriousness of his crime as to undermine respect for law.'" Morel v. Thomas, No. 02 Civ 9622, 2003 WL 21488017, at *5 (S.D.N.Y. June 26, 2003) (quoting N.Y. Exec. L. § 259-i(2)(c)(A)). Courts in this District have rejected similar political pressure arguments in other cases. See, e.g., Seltzer, 2003 WL 21744084. The Court denies Siao-Pao's political pressure claim as he presents no evidence of political pressure, and even if he did, such a consideration would not necessarily be impermissible under the circumstances governing this case.

Accordingly, Siao-Pao's petition for habeas relief is denied.

## IV. ORDER

For the reasons set forth above, it is hereby

**ORDERED** that the motion of petitioner Leopold Siao-Pao ("Siao-Pao") for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 herein is DENIED.

As Siao-Pao has not made a substantial showing of a denial of a constitutional right, a certificate of appealability will not issue. See 28 U.S.C. § 2253(c);

Lucidore v. N.Y. State Div. Of Parole, 209 F.3d 107, 111-13 (2d Cir. 2000).

The Clerk of the Court is directed to withdraw any pending motions and to close the case.

**SO ORDERED.**

DATED:     New York, New York
           25 June 2008

Victor Marrero
U.S.D.J.